No. 47,032

THE STATE OF KANSAS, *Appellee*, v. FREDDERICK LLOYD McVEIGH, *Appellant*.

(516 P. 2d 918)

Opinion filed December 8, 1973.

*David G. Crockett,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellant.

*Larry Kirby,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of counsel, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Fredderick Lloyd McVeigh, was convicted of aggravated arson, a Class B felony, and was sentenced to serve a term of from fifteen years to life. He has appealed, alleging numerous and sundry trial errors.

It has become apparent from studying the record, from reading McVeigh's brief, and from listening to oral arguments that Mr. McVeigh was a member of the Weatherman faction of the Students for a Democratic Society and was an outspoken advocate of leftist political philosophy. In the summer of 1970, he was sojourning in the City of Wichita where he made numerous radio appearances on local talk shows, and appeared before several public groups and organizations airing his political views, gaining thereby, we are entitled to assume, a modicum of publicity, if not notoriety.

In the very early hours of July 28, 1970, a fire bomb, or molotov cocktail, was hurled against the building housing the Wichita Police Academy, and McVeigh has been charged with being the culprit. Shortly after the bombing episode McVeigh appears to have migrated to Portland, Oregon, where he was arrested sometime in August for reasons which are not disclosed in the record. At the time of his arrest he was interviewed at the city jail by Agents Snyder and Heald of the Federal Bureau of Investigation and subsequent interviews took place on three different occasions during the time McVeigh was imprisoned in the Multnomah County Rock Butte Jail.

In his first assignment of error McVeigh challenges the admisson into evidence of a signed confession, which is not set forth in the record. It was given to the F. B. I. agents at the final or fourth interview held February 8, 1971. A motion to suppress the confession was filed May 14, 1971, and a hearing conforming to the mandate of *Jackson v. Denno*, 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205, was held out of the jury's presence during the progress of the trial which commenced June 14. The defendant did not testify at the out-of-court hearing to suppress. Neither did his wife, who was present and testified at the trial itself. A number of grounds are advanced for assailing the confession and these will be taken in order:

(1) It is contended the confession was not freely and voluntarily given but was obtained under duress by the F. B. I. agents who deviously withheld information concerning the whereabouts of Mr. McVeigh's wife. It is a just and fair principle of law that to be admissible a confession must have been made freely and voluntarily and not under compulsion or duress. (*State v. McCarther*, 197 Kan. 279, 416 P. 2d 290; *State v. Milow*, 199 Kan. 576, 433 P. 2d 538.) Had McVeigh's confession been induced by the unprincipled strategy of concealing the whereabouts of his wife, a serious doubt would be cast on its voluntary character, for coercion may be mental as well as physical. (*Andrews v. Hand*, 190 Kan. 109, 117, 372 P. 2d 559.)

But it is the duty of the trial court in the first instance to determine whether a confession has been freely made and its ruling thereon, where supported by substantial competent evidence, will not be set aside on appeal. (*State v. Harden*, 206 Kan. 365, 480 P. 2d 53; *State v. Creekmore*, 208 Kan. 933, 495 P. 2d 96.) We believe the ruling of the trial court is substantially supported by the record. Agent Snyder testified that on February 8, the date the confession was obtained, the defendant asked him whether he had any information concerning the location of his wife and that he, Snyder, told defendant he had heard she was in jail in California, but didn't know her exact location at that time. Snyder further testified that he himself did not know the specific details of the wife's arrest at the time he was talking to McVeigh but that two or three days later he called Californa and learned where she was and what the charges were. This information was then conveyed to the defendant. The record indicates that Mrs. McVeigh was later found guilty

of whatever the charges were, and placed on two years' probation. Snyder's testimony in regard to the confession is not shown to have been contradicted in any way. Agent Heald's testimony is summarized very sketchily indeed, but what little there is in the record accords in general with that of his partner. In our opinion the trial court was justified in overruling McVeigh's objection on this point.

(2) The defendant next claims he was under the influence of drugs when the confession was obtained. The record reflects no evidence to support this claim. Both F. B. I. agents who talked with McVeigh on February 8 when the confesson was made testified he did not appear to be under the influence of drugs; that they had no reason to suspect he was taking drugs; and he made no mention of it at the time. Mr. Snyder further stated that they would not have taken a statement from one who appeared to be under drugs; to have done so would be against bureau regulations.

McVeigh also contends the trial court erred in overruling his motion for continuance made at this juncture to enable him to secure witnesses from Oregon to support his claim of drug consumption. The granting of a continuance lies within the sound discretion of the trial court and its refusal to grant a continuance will not be overturned in the absence of a clear abuse of discretion. (*State v. Hill*, 145 Kan. 19, 22, 64 P. 2d 71; *State v. Boyd*, 206 Kan. 383, 479 P. 2d 837; *State v. McCollum*, 209 Kan. 498, 496 P. 2d 1381.) No abuse of discretion can be seen here. The defendant filed his motion to suppress a whole month before the trial commenced, and he made no effort to secure the attendance of witnesses or obtain their depositions in the intervening thirty days. This is hardly the hallmark of diligence, and the trial court can not be faulted for refusing a continuance after the trial had started.

(3) The defendant further complains that he was not permitted during cross-examination of Snyder and Heald to inquire into the first three interviews which were held, although this point was not mentioned or brought up on oral argument. The basis assigned for this claim of error is that the defendant was thus precluded from showing that the confession was the product of prior illegally obtained and inadmissible confessions—the fruit of the poison tree so to speak—and McVeigh cites, in his brief, our decision in *State v. Lekas*, 201 Kan. 579, 442 P. 2d 11. We acknowledge the rule set out in *Lekas* but the trouble with the defendant's position here is that there is naught in this record to establish that any prior

confession was every obtained. So far as we can learn from this record the defendant offered no evdence whatever on his motion to suppress, but it is perfectly clear that he executed a waiver of rights prior to making his confession on February 8. In light of the foregoing we cannot say the court erred in limiting cross-examination.

(4) There is no merit in Mr. McVeigh's next protest that his counsel was not present when the confession was obtained. According to the uncontradicted testimony of Mr. Snyder, the agents did not initiate the February 8 meeting but had responded to word sent by McVeigh that he wanted to see them. When McVeigh began to make his statement Mr. Heald asked if his attorney knew he was giving it to them. McVeigh replied he didn't care whether his attorney knew or not. Under these circumstances he is in no position to complain of his counsel's absence.

(5) It is the defendant's overall contention that the state failed to establish the confession as having been freely made which, of course, was its burden under the provisions of K. S. A. 1972 Supp. 22-3215 (4). (See *State v. Voit,* 207 Kan. 635, 485 P. 2d 1306.) It is our opinion, however, that when the defendant states that the evidence "clearly shows" his confession was involuntary, he fails entirely to evaluate the record correctly or to comprehend it fully. The testimony given by Agents Snyder and Heald was both competent and substantial, and it appears amply sufficient to justify the trial court in admitting the confession.

Turning to a different area, the defendant contends the trial court erred in rejecting his motion to exclude certain witnesses from the courtroom. He argues that the exclusion of witnesses is required by the provisions of K. S. A. 1972 Supp. 22-2903 when such is requested by either the defendant or the state. McVeigh misconceives the scope of that statute. The mandatory features of the statute apply only to the preliminary phases of a prosecution leading up to and including the preliminary examination, not to the criminal trial itself. (*State v. Ralls,* 213 Kan. 249, 515 P. 2d 1205.) Our rule relating to the separation of witnesses at the trial level continues to be as it had been before the Code of Criminal Procedure became effective. In *State v. Theus,* 207 Kan. 571, 485 P. 2d 1327, that rule was expressed in this fashion:

"Whether to exclude prospective witnesses from the courtroom prior to their testimony, and whether to make exceptions, is within the judicial discretion of a trial court in the absence of a showing of prejudice." (Syl. ¶ 4.)

See, also, *State v. Ralls,* supra; *State v. Owens and Carlisle,* 210 Kan. 628, 629, 504 P. 2d 249. Inasmuch as prejudice has not been shown to have resulted from the trial court's refusal to exclude the witnesses mentioned, this claim of error lacks merit and must be rejected.

A motion for a change of venue was filed by Mr. McVeigh on the premise that because of his radio appearances and his speaking engagements, as well as the publicity attending the crime itself, he could not receive a fair trial in Sedgwick County before an unbiased and impartial jury. Applications for change of venue are addressed to and rest within the sound judicial discretion of the trial court and its ruling will not be disturbed in the absence of a clear abuse of discretion. (*State v. Bigler,* 138 Kan. 13, 23 P. 2d 598; *State v. McLaughlin,* 207 Kan. 594, 485 P. 2d 1360; *State v. Lamb,* 209 Kan. 453, 497 P. 2d 275; *Wheeler v. United States,* 382 F. 2d 998.) The record does not reveal what, if any, evidence was introduced at the hearing of defendant's motion, either by way of affidavit or otherwise. We have no way of knowing the extent of the publicity given McVeigh by the news media, or the breadth of his speaking engagements or what coverage was given the fire bombing of the Police Academy. Neither do we know whether difficulty was encountered in impaneling a jury to hear the case. In the absence of some evidentiary showing of community bias or prejudice we have no basis for determining whether error was committed in refusing a change of venue.

Two points are raised with respect to the admission of evidence. The first relates to the testimony of Betty Schountz who testified she had never met McVeigh personally but had talked to him over the phone seven or eight times; that she first contacted him after he was on a radio program; that on Friday before the bombing she talked to a person she believed to be McVeigh who asked whether her husband had a 30-06 rifle, that he wanted to go deer hunting in Wyoming; that prior thereto she had a conversation about Rudd being in Wichita, along with seven or eight other Weathermen and that he was great in nitro and the cocktails, and if the defendant got bumped off, Mark Rudd would be taking over; that the party on the telephone stated he would continue to work with the establishment as long as he could, but once he could not he would go underground. The defendant objected to this testimony as irrelevant and immaterial.

The state concedes the references to Rudd were irrelevant, and

unexpected as well, but it contends that the conversation held four days before the arson where Betty was asked if her husband has a 30-06 rifle was admissible as circumstantial evidence of intent, when considered in connection with a statement made by McVeigh to a friend that he would shoot down the police helicopter if he had a weapon. While much of Betty's testimony may have been irrelevant we cannot say that it is affirmatively shown to have been substantially prejudicial to his rights in view of the impressive evidence of guilt, much of which is not detailed in this opinion. (*State v. Armstrong*, 207 Kan. 681, 486 P. 2d 1322; *State v. Kirk*, 205 Kan. 681, 472 P. 2d 237.)

Other objections to the introduction of evidence were directed against certain physical items found at the scene and against pictures taken of the Police Academy during a trial recess. Neither objection appears to us as being valid. The items picked up at the scene of the bombing were sufficiently identified by the officer who found them as having been placed in the box which was produced at the trial. While the pictures were taken approximately a year after the offense was committed, the police photographer who took them explained what few differences there were from the physical appearance obtaining at the time of the bombing.

The defendant filed a motion for a free transcript of his preliminary hearing and he now assigns the overruling of the motion as error, citing *Griffin v. Illinois*, 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585. *Griffin*, however, is not the last federal word in this area. The right of an indigent accused to be provided with a transcript of the preliminary examination without expense was before our own court in two late cases, *State v. Kelley*, 209 Kan. 699, 498 P. 2d 87, and *State v. Julian*, 212 Kan. 169, 509 P. 2d 1123, in both of which we followed the rationale of the more recent federal case of *Britt v. North Carolina*, 404 U. S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431. *Britt* holds, in effect, that while the state must provide an indigent defendant with a transcript when needed for an effective defense, two of the significant factors to be considered in determining need are the value of the transcript to the defendant and the availability of alternative devices which will fulfill the same function as a transcript.

As was true in both the *Kelley* and *Julian* cases, Mr. McVeigh's trial was held within a comparatively short time after the preliminary hearing; the same counsel represented McVeigh in both hear-

ings and McVeigh would have had access to the reporter who recorded the earlier testimony. It appears also from his counsel's examination of at least one of the witnesses who testified at the preliminary hearing that memories had not become dim with the passage of time. Moreover, as we pointed out in *Kelley*, substantial tools for discovery have been available to an accused since the Criminal Code came into effect which would assist him in preparing and presenting his defense. We must conclude that the trial court did not err in refusing to require the state to prepare a transcript of the evidence presented at the preliminary hearing for the use of Mr. McVeigh.

An understanding of the defendant's next point requires an examination of the statutes relating to arson. K. S. A. 1972 Supp. 21-3718 defines arson, so far as now material, as follows:

"(1) Arson is knowingly, by means of fire or explosive:

"(*a*) Damaging any building or property in which another person has any interest without the consent of such other person . . ."

Aggravated arson is defined in 21-3719 in these words:

"Aggravated arson is arson, as defined in section 21-3718, and committed upon a building or property in which there is some human being."

The defendant earnestly contends that the Police Academy was not "damaged" within the meaning of the present statutes defining arson. He argues that the key element of aggravated arson is that of damage which, he asserts, the state never did establish. Accordingly, he argues that his motion for discharge should have been sustained and that the trial court erred in refusing a requested instruction on the subject of damage.

Our limited research has unearthed no legal authority construing the term "damage" within the framework of the statute, and counsel has directed us to none. However, we cannot say as a matter of law that no damage whatever was occasioned to the building, even though the physical effects of the bombing episode were comparatively minor and largely restricted to smoke and scorching damage. The legislature has not seen fit to define any quantum of damage as being required to invoke the penalty of the statute. Some damage of course would be necessary but it need not be extensive, in our view.

In our opinion the instruction requested by McVeigh purporting to define the term damage in the context of the statute would have

been of little or no assistance to the jury. The suggested definition was taken from Webster's Seventh New Collegiate Dictionary:

"Damage is defined as loss or harm resulting from injury to person, property, or reputation."

This definition scarcely gets to the root of the problem that the defendant seeks to raise. It does not purport to measure loss or harm by the extent or severity of the damage. In the final analysis, we are constrained to believe no specific definition of damage need go to the jury. The word is in common usage and is found in everyday experiences. It is generally understandable, we suppose, to lay and professional people alike.

The trial court instructed the jury that to establish the charge of aggravated arson it must be proved that the defendant knowingly damaged the building without the consent of the Wichita Police Department at the time a human being was in it. This appeals to us as an adequate instruction concerning the elements of the offense and we believe no elaboration was required as to damage. We think also there was sufficient evidence of damage to the building in the popular sense to justify the verdict of guilty.

Complaint is lodged against two orders made by the court permitting the state to endorse the names of additional witnesses on the information. One of the orders was entered June 7, a week before the trial, and covered twelve witnesses; the other, dated June 15, related to one witness only. Although we do not look with favor on the practice of permitting the tardy endorsement of witnesses on a wholesale scale, we are hardly in a position to brand it as prejudicial in this case.

In the first place the record contains none of the testimony given by eight of the witnesses endorsed on June 7 and only excerpts are set out from the testimony of the four others, i. e., the two F. B. I. agents, Betty Schountz and Richard Steen. Steen, incidentally, was not used by the state but was called as a witness by Mr. McVeigh. Ten of the twelve witnesses named in the order first made were from Wichita, and would have been accessible easily during the week which intervened between June 7 and the commencement of trial. There is nothing to explain why they could not have been contacted within that time. Snyder and Heald, of course, were far away but the defendant had already anticipated their attendance and knew the nature of their testimony. No continuance or addi-

tional time was requested because of the lateness of the June 7 endorsements, nor was any surprise claimed when the order permitting them was made. The defendant concedes that opportunity was afforded him to interview the single witness endorsed on June 15. The testimony of this witness is not disclosed by the record and there is no suggestion that it was prejudicial or damaging to the defendant's cause.

Our rule relating to the late endorsement of additional names of witnesses on an information is succinctly phrased in *State v. Johnson*, 210 Kan. 288, 502 P. 2d 802:

"In a criminal action the endorsement of additional names of witnesses on the information, even during the trial rests in the sound discretion of the trial court, and material prejudice in the ruling must clearly be shown before it constitutes reversible error." (Syl. ¶ 5.)

For other cases of like tenor, see 2 Hatcher's Kansas Digest (Rev. Ed.), Criminal Law, § 62, and cases cited therein.

Inasmuch as the defendant has not shown, either clearly or otherwise, that he was materially prejudiced by the late endorsement of additional names on the information, it cannot be said the trial court committed reversible error in permitting the same.

Finally the defendant complains of the size of the appeal bond set by the trial court, the amount of the bond being $75,000. He does not explain, however, how this action impaired his right to a fair trial and we can think of no rational explanation. We regard this complaint as frivolous so far as the conduct of the trial is concerned.

We find no prejudicial error inhering in the proceedings and the judgment of the trial court is affirmed.