IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,324

STATE OF KANSAS,
*Appellee*,

v.

FRANCISCO ESTRADA-VITAL,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, a district court's factual findings on a motion to suppress are reviewed for substantial competent evidence, and the legal conclusions to be drawn from the evidence are reviewed de novo. But where the necessary factual findings have not been established in the district court proceeding, the analytical model has been disrupted because appellate courts do not make their own factual findings. Rather, appellate courts only review those factual findings which have been made by the district courts.

2.

Where defense stipulations in the district court prevent the evidentiary inquiry necessary to produce the factual findings below that would permit appellate consideration of appellant's theory of the unlawfulness of seized evidence, an appellate court will not speculate as to what the facts might have been and will decline to consider the matter on appeal.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 6, 2013. Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed August 21, 2015.

1

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of the Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*William Votypka*, assistant county attorney, argued the cause, and *Linda J. Lobmeyer*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.:  Law enforcement officers stopped Francisco Estrada-Vital's vehicle for displaying an improper license plate. Officers removed Estrada-Vital and his passenger from the car, searched the vehicle, and seized a wallet from inside the vehicle. The wallet disclosed Estrada-Vital's identity, which led to the discovery that his driver's license was revoked, which in turn led to a search incident to arrest that produced cocaine from Estrada-Vital's pants pocket.

In the ensuing drug prosecution, the district court denied a motion to suppress the cocaine. The Court of Appeals affirmed the district court on procedural grounds, opining that the district court did not have an opportunity to consider and rule upon the search and seizure challenge that Estrada-Vital now presents on appeal. *State v. Estrada-Vital*, No. 107,324, 2013 WL 4778150 (Kan. App. 2013) (unpublished opinion). We granted Estrada-Vital's petition for review, in which he asserts that he did all that he had to do to preserve the Fourth Amendment to the United States Constitution issue because the State has the burden of proving the lawfulness of a warrantless search and seizure. Based on the unique circumstances of this case, we affirm.

2

On December 2, 2010, Corporal Scott Chalmers noticed a vehicle with an out-of-state license plate driving slowly through a trailer park. Chalmers checked the vehicle's registration and learned the vehicle was displaying an improper license plate. Chalmers intended to pull the vehicle over, but he lost sight of it. Chalmers radioed Sergeant Jerry Quint and informed him of the registration violation in the event that Quint encountered the vehicle.

Quint later saw the vehicle and initiated a traffic stop for the registration violation. Shortly thereafter, Chalmers arrived to assist with the stop. Quint asked the driver, later identified as Estrada-Vital, for his driver's license, insurance, and registration. Estrada-Vital did not provide Quint with any of the requested information.

While Quint was speaking with Estrada-Vital, Estrada-Vital was reaching his hands between the vehicle's seat and center console. The officers told Estrada-Vital numerous times to remove his hands from the area. Not knowing what Estrada-Vital was reaching for, the officers asked Estrada-Vital and his passenger to step out of the vehicle. The officers conducted an initial pat-down search of Estrada-Vital but did not find a wallet. Quint then searched the area of the vehicle where Estrada-Vital had placed his hands and found Estrada-Vital's wallet. The wallet contained Estrada-Vital's identification, which led the officers to discover that Estrada-Vital's driver's license was revoked.

The officers placed Estrada-Vital under arrest for driving while his license was revoked. During a thorough pat-down search, Chalmers discovered a folded dollar bill containing white powder in Estrada-Vital's jeans watch-pocket. Chalmers then transported Estrada-Vital to the law enforcement center. The white powder later tested

positive for cocaine. Based on these events, the State charged Estrada-Vital with possession of cocaine, driving while declared a habitual violator, no proof of insurance, and a registration violation.

*Motion to Suppress*

Estrada-Vital filed a motion to suppress which ultimately prayed that the court "suppress all evidence obtained as a result of the unlawful and unreasonable search of [Estrada-Vital's] vehicle."

The motion's facts section related that Corporal Chalmers first noticed Estrada-Vital's vehicle because it was driving slowly through a trailer park, displaying an out-of-state license plate. The officer, out of curiosity, checked the vehicle's license plate through dispatch and learned it did not belong on the vehicle Estrada-Vital was driving. The motion then pointed out Corporal Chalmers' preliminary hearing testimony in which he said that he had not checked the speed of Estrada-Vital's vehicle in the trailer park; that no speed limit is posted in the trailer park; that there are speed bumps on the road where the officer observed the vehicle in the trailer park; and that the reason he stopped the vehicle was that the driver was going slow and "looked like he may not know where he was." But then the motion alleged that, after Corporal Chalmers learned of the tag violation through dispatch, he stayed in the area and "advised Sergeant Quint, who was armed," about the vehicle with an illegal tag, and the sergeant stopped the vehicle.

The fact section of the motion further described that Sergeant Quint had the driver and passenger exit the vehicle; that the driver was subjected to an initial pat-down; that Sergeant Quint retrieved a wallet from the center console area of the car that contained identification for Francisco Estrada-Vital; that a driver's license check on that identification revealed a revoked license; and that Estrada-Vital was arrested, handcuffed,

4

and subjected to a second pat-down that produced a folded one dollar bill containing a white substance that would subsequently test positive for cocaine.

The arguments and authorities section of the motion contained six paragraphs:

"1. The Defendant argues that the police seized evidence in violation of his rights and asserts the evidence must be suppressed as 'fruit of the poisonous tree.' *See Wong Sun v. United States*, [371] U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Epperson*, [237] Kan. 707, 703 P.2d 761 (1985).

"2. Police officers did not have a search warrant. Under the Fourth Amendment of the United States Constitution, searches conducted without warrants are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Platten*, 225 Kan. 764, 594 P.2d 201 (1979). Exceptions to the warrant requirement have been 'jealously and carefully drawn.' *Jones v. United States*, 357 U.S. [493], 78 S. Ct. 1253, 2 L. Ed. 2d 1514 [1958]; the burden of proof is on those seeking to invoke the exception. *United States v. Jeffers*, 342 U.S. 48, 72 S. Ct. 93, [96] L. Ed. 59 [1951].

"3. The State bears the burden of proof in a motion to suppress evidence, by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515[, 93 L. Ed. 2d 473] (1986).

"4. Corporal Chalmers' attention was only drawn to Mr. Estrada-Vital's car because he was driving slowly on a road in a trailer park with speed bumps. Corporal Chalmers did not know what speed Mr. Estrada-Vital was driving at.

"5. Mr. Estrada-Vital was then stopped for a traffic violation. *The search of Mr. Estrada-Vital's vehicle exceeded the scope of the traffic stop.*

"6. While consent is an established exception to the warrant requirement, there was not consent to search in this instance." (Emphasis added.)

Finally, as noted, the suppression motion concludes with the prayer that "the Defendant requests that this Court suppress all evidence obtained as a result of the unlawful and unreasonable search of his vehicle."

At the pretrial conference, defense counsel asked the district court to suppress the cocaine found in Estrada-Vital's pocket, albeit counsel conceded that the officers had a valid reason to stop Estrada-Vital's vehicle and that the subsequent arrest for driving without a license was not at issue. At one point defense counsel appeared to be challenging whether the search of the vehicle exceeded the reason for the stop. But later in the hearing, defense counsel specifically abandoned that argument by stipulation when the prosecutor asked for clarification of the suppression motion so that the State could prepare for the evidentiary hearing the district court was about to set. Given its importance to our resolution of the case, we take the liberty of setting forth that exchange among the participants:

"THE COURT: Okay. Can we have the witnesses available at 8:00 [in] the morning on the 1st of June?

"[THE PROSECUTOR]: We can. I—I guess I'm—I'm not sure what we're trying to suppress since there is no evidence of the crime that we will want presented at the trial pursuant to what's being asked in the motion.

"THE COURT: Okay.

"[THE PROSECUTOR]: Which is evidence from the vehicle, and there is no evidence from the vehicle, so I just need some clarification as to what we're dealing with, just to verify.

"THE COURT: Okay. Good question. Is there something in your motion to suppress that's—specifically, let's separate this out a little bit. *Anything in the vehicle that was—was seized that in the defense's position should not have been*?

"[DEFENSE COUNSEL]: *No, Your Honor.*

"THE COURT: So what was seized was in his pocket?

"[DEFENSE COUNSEL]: Yes, Your Honor.

6

"THE COURT: Does that motion to suppress deal with that?

"[DEFENSE COUNSEL]: I believe it does.

"THE COURT: Okay. And as far as the inappropriate behavior of the officer in searching his pockets, your claiming that what—what did they do that was wrong, is what I'm getting at.

"[DEFENSE COUNSEL]: Well, I—the attention was only drawn to Mr. Estrada-Vital because he was driving slowly.

"THE COURT: Ignore that now. If they made a valid stop because his license didn't—didn't reflect what the car was, they had a reason to stop him. Right?

"[DEFENSE COUNSEL]: Right.

"THE COURT: *Did they have a reason to arrest him?*

"[DEFENSE COUNSEL]: *They did.*

"THE COURT: Okay. So if he was arrested, they then—they had a—they had a basis and a requirement to take him to the Law Enforcement Center. At which point he would be searched before being placed into custody, whether it's at the scene or at the Law Enforcement Center. *What did they do illegally or inappropriately that should be suppressed?*

"[DEFENSE COUNSEL]: *There* [*are*] *no additional facts other than that, Your Honor*, so—."

"THE COURT: Okay, Ms. Lobmeyer [the prosecutor], [are] there any facts that we're missing? I mean, if those are the facts, I can make the ruling today if we stipulate to those facts.

"[THE PROSECUTOR]: I—I absolutely stipulate that those are the facts, yes.

"THE COURT: Okay. With those facts, the motion to suppress would be denied and the evidence seized from the defendant himself [is] available for presentation to the jury." (Emphasis added.)

At trial, when the prosecution moved to admit the cocaine into evidence, defense counsel objected, arguing the cocaine in question was "obtained as a result of an illegal search and seizure which violated Mr. Estrada's constitutional rights . . . [t]he search of his person exceeded the scope of the traffic stop . . . [a]nd this drug evidence must be

7

excluded as fruit of a poisonous tree." The district court overruled the objection based upon its prior ruling.

The jury convicted Estrada-Vital as charged. The district court sentenced Estrada-Vital to 18 months' probation with an underlying prison term of 10 months.

Estrada-Vital timely appealed to the Court of Appeals, alleging that the district court erred in denying his motion to suppress and erred in instructing the jury on the State's burden of proof. Regarding his motion to suppress, Estrada-Vital argued the officer's warrantless seizure of his wallet from his vehicle and the subsequent warrantless search of the wallet exceeded the scope of the traffic stop. Therefore, he argued, because his arrest was based on the information contained in his wallet, his arrest was illegal and the subsequent search incident to arrest was invalid as fruit of the poisonous tree.

The Court of Appeals determined that Estrada-Vital was making a new argument on appeal and rejected it because a party cannot object at trial to the admission of evidence on one ground and then appeal on a different ground. *Estrada-Vital*, 2013 WL 4778150, at *2-3. The Court of Appeals also rejected Estrada-Vital's jury instruction argument. 2013 WL 4778150, at *4. Estrada-Vital's timely petition for review on the suppression issue was granted.

PRESERVATION OF SUPPRESSION ISSUES FOR APPELLATE REVIEW

On review, Estrada-Vital acknowledges that "[t]he search in this case was primarily justified as a search incident to arrest for driving on a revoked license." But he continues to assert his appellate defense theory that the "arrest was premised on the identification found in [defendant's] wallet," and because the identification was unconstitutionally procured via a warrantless search of the wallet, "it was fruit of the

poisonous tree and the arrest based on that identification is similarly tainted." He then summarily declares that because the arrest was unlawfully tainted, the facially valid search incident to arrest also violated the Fourth Amendment requiring that the cocaine, apparently as more poisonous fruit, had to be suppressed.

Estrada-Vital does not contend that he presented this creative theory to the district court. Rather, he argues that he presented sufficient facts to establish a warrantless search, which is presumptively unreasonable, and the State then had the burden of proving the lawfulness of a search and seizure. Specifically with respect to this case, Estrada-Vital contends that he objected on the ground of a Fourth Amendment violation in the district court and his appellate challenge to the admission of the cocaine is based upon the very same ground, *i.e.*, a violation of his Fourth Amendment rights. He declares that "[w]hat [he] focused on at the motion hearing is irrelevant; he didn't have to do anything at the motion hearing." Accordingly, he asserts that the panel should have reached the merits of his claim.

*Standard of Review*

The district court's factual findings on a motion to suppress are reviewed for substantial competent evidence, but the legal conclusions to be drawn from the evidence are reviewed de novo. *State v. Overman*, 301 Kan. 704, 709, 348 P.3d 516 (2015). But as will be discussed below, the absence of factual findings in the district court proceeding interferes with this analytical model, because appellate courts do not make their own factual findings. Rather, appellate courts only review those factual findings which have been made by the district courts. *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009).

*Analysis*

For the most part, Estrada-Vital's argument is based upon fundamentally sound legal principles. The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"The Fourth Amendment contemplates that a 'reasonable,' and, thus, a constitutionally valid search, is one conducted pursuant to a warrant issued by a judicial officer based on a factual showing of probable cause." *State v. Julian*, 300 Kan. 690, 692, 333 P.3d 172 (2014), *overruled on other grounds by State v. James*, 301 Kan. 898, 349 P.3d 457 (2015). When police conduct a warrantless search, we start with the premise that the search is "per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement." *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). The exceptions to the warrant requirement are: "'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" 294 Kan. at 55 (quoting *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 [2008]).

For decades, we have required that "when a defendant challenges the admissibility of evidence on the basis it was obtained by an unlawful search and seizure, the [S]tate has the burden of proving that the search and seizure was lawful." *State v. Voit*, 207 Kan. 635, 639, 485 P.2d 1306 (1971). That burden is codified in K.S.A. 22-3216(2), which provides that, at a hearing upon a defendant's written motion to suppress evidence, "the burden of proving that the search and seizure were lawful shall be on the prosecution."

10

Furthermore, "the exclusionary rule prohibits the admission of the 'fruits' of illegally seized evidence, *i.e.*, any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom." *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005). Obviously, the fruit of the poisonous tree doctrine expands the State's burden of proving lawfulness of seized evidence.

But as noted by our standard of review, the suppression of evidence involves a factual component, as well as the legal principles. It is on the factual side of the analysis that the defendant must carry a portion of the burden. Statutorily, K.S.A. 22-3216(2) requires that a defendant seeking to suppress evidence must file a written motion which must "state facts showing wherein the search and seizure was unlawful." See also *State v. Sumner*, 210 Kan. 802, 804, 504 P.2d 239 (1972) (movant's written motion must "allege facts showing wherein the search and seizure was unlawful"). The statute then provides that "[t]he judge shall receive evidence on any issue of fact necessary to determine the motion." K.S.A. 22-3216(2). Obviously, that means it is incumbent upon a defendant to establish the facts necessary to support his or her suppression motion in the district court. Again, appellate courts do not make factual findings in the first instance; we only review district court findings.

Estrada-Vital asserts that all of the facts necessary to support his appellate fruit-of-the-poisonous-tree theory were set out in his suppression motion and that he need do nothing further. He suggests that the State must refute all possible theories of unlawfulness that might flow from the stated facts, and, apparently, that the district court is expected to connect the dots between the stated facts in order to intuit the defense's theory of how they constitute a Fourth Amendment violation. While defendant's argument that he had to do nothing more than "state facts," as K.S.A. 22-3216(2) appears to suggest, raises an interesting question, we need not resolve it today because defense

11

counsel did *more* than just state facts. Defense counsel made the affirmative stipulations that the illegal tag provided the justification for the traffic stop; that nothing was illegally seized from Estrada-Vital's vehicle; that the officers had a valid reason to arrest Estrada-Vital; that the arrest was a valid reason to search Estrada-Vital's person; and, most importantly, that "[t]here [were] no additional facts other than that" for the district court to consider.

Defense counsel's stipulations in open court, when the district court was attempting to set the requisite evidentiary hearing, assured the State and the district court that the argument upon which he now relies—that unlawfully obtained evidence from the vehicle led to the discovery of the drugs—was not in issue. Accordingly, that assurance effectively precluded the district court from having the opportunity to receive evidence on all of the facts that would have been necessary to support the defense theory. Generally, appellate courts do not allow a defendant to invite error in the district court and complain of that error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014); see also *State v. Peagler*, 76 Ohio St. 3d 496, 500, 668 N.E.2d 489 (1996) ("To require the prosecution to prove the validity of every aspect of the search when there has been a stipulation to the facts and a narrowing of the issues would in effect permit a defendant to invite error.").

Additionally, in this case, the defense stipulations that foreclosed the need for the prosecution to present facts supporting the legality of all aspects of the police encounter denied us the benefit of critical district court factual findings needed to support Estrada-Vital's appellate argument. For instance, at an early point in the colloquy between the district court and defense counsel, the attorney suggested that the officer "could have just given [Estrada-Vital] a ticket and let him go on his way." If the officer would have had the information necessary to complete a Uniform Complaint and Notice to Appear, then the officer would have already had the information Estrada-Vital contends was the fruit

of the allegedly unlawful search of his wallet. See K.S.A. 2008 Supp. 8-2106(b) (describing content of traffic citation, including name and address of person). In other words, if the officer had the necessary information to discover that the driver had a revoked license independent of the wallet search, then the arrest was not invalidated by the search.

Further, defendant does not explain why the driving on a revoked license arrest was the necessary predicate for the pat-down search. The officers had already confirmed that Estrada-Vital was operating an illegally tagged vehicle. Therefore, they had to either discover Estrada-Vital's identity or take him into custody. They could not issue a "John Doe" ticket and let him drive off without knowing whether he was properly licensed or whether the vehicle was stolen. In other words, the driver's identity was not necessarily a fruit of the wallet search, but rather it was a necessary predicate to the termination of the encounter. Moreover, we are left to ruminate on how the officers knew the wallet they pulled from the vehicle did not belong to the passenger, or whether they could have obtained the driver's identity by other means, such as ascertaining the vehicle's owner by having dispatch check the Vehicle Identification Number, or perhaps asking the passenger.

In short, defense counsel's stipulations in the district court prevented the evidentiary inquiry necessary to produce the factual findings below that would permit appellate consideration of Estrada-Vital's fruit of the poisonous tree theory, without speculation as to what the facts might have been. See *State v. Moore*, 283 Kan. 344, 364, 154 P.3d 1 (2007) (refusing to speculate whether officer forcibly removed ashtray to reveal evidence). Accordingly, we affirm the Court of Appeals' refusal to entertain the merits of appellant's arguments.

Affirmed.

13