NOT DESIGNATED FOR PUBLICATION

Nos. 118,247
118,280

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

AMANDA SUE HOCKMUTH,
*Appellee*.

STATE OF KANSAS,
*Appellant*,

v.

AMBER RENEE CLINE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Barton District Court; RON SVATY, judge. Opinion filed April 13, 2018. Vacated and remanded with directions.

*Douglas A. Matthews*, assistant county attorney, *Näna N. Brammer*, assistant county attorney, *Amy J. Mellor*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Joel B. Jackson*, of Great Bend, for appellee Amanda Sue Hockmuth.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Ellinwood, for appellee Amber Renee Cline.

1

Before BRUNS, P.J., PIERRON and POWELL, JJ.

POWELL, J.:  In this consolidated appeal, the State of Kansas seeks interlocutory review of two separate district court orders suppressing evidence seized following two separate vehicle searches of cars driven by Amanda Sue Hockmuth and Amber Renee Cline. In Hockmuth's case, the district court granted the motion to suppress because it found that the officers lacked a reasonable and articulable suspicion to conduct a dog sniff during the traffic stop. In Cline's case, the district court granted the motion to suppress without making any findings at all. The State argues the district court should not have suppressed the evidence because the dog sniffs did not unreasonably prolong the traffic stops. Unfortunately, because the district court failed to make sufficient factual and legal findings to allow for meaningful appellate review of the propriety of its suppression orders, we vacate its orders and remand both cases for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *State v. Hockmuth*

In January 2017, the State charged Hockmuth with one count of misdemeanor possession of marijuana and one count of driving without headlamps when required. Prior to trial, Hockmuth filed a motion to suppress with the district court, arguing the officers unreasonably extended the scope and duration of the traffic stop by requesting a K-9 unit to perform a dog sniff on her vehicle without any reasonable suspicion of illegal criminal activity. Instead of requesting an evidentiary hearing, the parties stipulated to the admission of the videotape of the stop, the police reports of the officers involved, what appears to be the arrest or charging affidavit, and the following facts:

> "1.    Sergeant James Bachar and Corporal Shane Becker are employed by the Great Bend Police Department.

2

"2.	Bachar and Becker are properly trained and certified as law enforcement officers.

"3.	On October 1, 2015, Bachar was patrolling the 1200 Block of Main Street in Great Bend, Kansas, 67530, which is located in Barton County.

"4.	At approximately 11:55 p.m., Bachar observed a vehicle operating with no headlights or taillights illuminated.

"5.	The defendant was the driver and only occupant of the vehicle.

"6.	At 11:58 p.m., Bachar initiated a stop of the vehicle.

"7.	Bachar request[ed] and received the defendant's driver's license and proof of insurance.

"8.	Bachar requested that Dispatch run a computer check on the defendant and her driver's license.

"9.	Bachar began writing a citation for the defendant's traffic violation.

"10.	Bachar knew the defendant was a user of illegal narcotics.

"11.	Bachar also had reliable information that the defendant was involved with persons who distribute methamphetamine.

"12.	At the time of the stop, no other facts were known to the officer that would give rise to the belief that the defendant had illegal narcotics in her car at that time.

"13.	At 11:58 p.m., Bachar requested via radio for Becker and his Police Service Dog, Lazar, to respond to his location.

"14.	Becker and Lazar arrived at 12:00 a.m.

3

"15.    Bachar had not yet completed the citation at this time.

"16.    Becker requested that the defendant exit the vehicle for safety reasons, while Bachar continued to fill out the citation.

"17.    Becker and Lazar[] are properly trained and certified to perform drug detection sniffs.

"18.    At 12:03 a.m., Becker walked Lazar around the vehicle for a sniff.

"19.    At 12:03 a.m., Lazar alerted to the odor of a controlled substance inside the vehicle.

"20.    According to officer body camera footage, the dog sniff lasted approximately 35 seconds.

"21.    At the time that Lazar alerted, Bachar had just finished discussing with the defendant, at her [initiation], the lights on the vehicle and her reason for not realizing that they were off.

"22.    Bachar also informed the defendant that her driver's side mirror needed to be fixed because it was not in compliance with the law.

"23.    At the time that Lazar alerted, Bachar had not yet explained or had the defendant sign the citation.

"24.    The officers searched the vehicle."

The district court granted Hockmuth's motion to suppress in a very brief written order, finding

"that Great Bend Police Department Officers involved in this matter did not have sufficient articulable suspicion to justify calling for the involvement of a drug sniffing

dog. The Court finds that mere knowledge that [Hockmuth] had been in the past into illegal narcotics and that the officers believed they had reliable information that she was involved with other persons who distributed methamphetamine was insufficient."

The district court made no other factual or legal findings in its order.

B.      *State v. Cline*

In February 2017, the State charged Cline with two misdemeanor counts of possession of controlled substances, one count of possession of drug paraphernalia, and one count of operating her vehicle with a defective registration lamp. Prior to trial, Cline filed a motion to suppress, arguing that the traffic stop—conducted by the same two officers who stopped/searched Hockmuth's vehicle—was merely a pretext to instead conduct a drug investigation of Cline.

At the evidentiary hearing on Cline's motion, Becker testified that at 10:23 p.m. on August 23, 2016, he saw a vehicle driving without a working tag light in Barton County, Kansas. Becker pulled over the vehicle several blocks later and recognized the driver as Cline. Becker testified that he had had past dealings with Cline that indicated she was a user of marijuana or illegal narcotics. However, Becker admitted that he had no idea whether Cline had illegal narcotics in her vehicle that night.

After initiating the traffic stop, Becker informed Cline of his reason for stopping her and requested her identification and proof of insurance. Becker testified that while he was talking with Cline, Bachar arrived at the scene a few minutes later. Although Becker stated that he had not requested Bachar to come to the scene, officers tended to back up each other during night-time traffic stops for officer safety. Becker asked Bachar to complete a check on Cline's driver's license and to begin filling out a warning citation for the tag light violation.

Bachar testified that he had not completed the driver's license check on Cline and had not finished writing the citation when Becker conducted the dog sniff of Cline's car. The first video of the traffic stop included in the record on appeal does not show Becker's initial interaction with Cline. Rather, it appears to show Bachar arriving at the scene and does not contain any audio until one minute into the recording. Between 1:07 and 1:30 minutes from the beginning of the recording, the audio recorded Bachar requesting from dispatch a driver's license check on Cline. The camera is then moved to show Cline's stopped car. Around 1:52 to 2:30 minutes, the video shows Becker walking Lazar, the drug dog, around Cline's car. Becker testified that Lazar alerted to the presence of a controlled substance at the driver's side door. Bachar testified that he had not completed the citation when Lazar indicated. Between 2:54 to 3:15 minutes, the audio of the video recording reveals that dispatch contacted Bachar with the results of the driver's license check.

Becker testified that he then asked Cline to exit her car so that he could conduct a search. Becker testified that the subsequent vehicle search uncovered a small pipe with a green leafy vegetation on it and two green pills. Becker stated that the green leafy vegetation field tested positive for marijuana and that a later test confirmed the green pills were a controlled substance.

Cline submitted a supplemental memorandum of law in support of her motion to suppress, arguing that the district court should suppress the evidence and find that "the officer must have some reasonable suspicion to run the drug dog during a routine traffic stop," regardless of whether it measurably prolongs the traffic stop. In a very brief written order, the district court granted Cline's motion to suppress without making any findings of fact or conclusions of law. The order read:

"WHEREUPON, the Court after taking the matter under advisement in order to review video of the traffic stop and allow for both parties to submit written closing finds

6

that the defendant's motion shall be granted and all evidence obtained from the seizure of the defendant shall be suppressed."

The State timely seeks interlocutory review of these suppression orders.

## DID THE DISTRICT COURT ERR BY GRANTING THE MOTIONS TO SUPPRESS?

The State argues that the district court erred in suppressing the evidence in both cases because the Fourth Amendment to the United States Constitution does not require officers to have a reasonable suspicion to conduct a dog sniff during a lawful traffic stop.

> "'When reviewing a district court's decision on a motion to suppress, we bifurcate our analysis, first assessing whether the factual findings below are supported by substantial competent evidence and then applying a de novo standard to the ultimate legal conclusion to be drawn from those facts.' The defendant carries the burden of establishing the facts necessary to support his or her suppression motion in the district court. However, the State bears the burden of proving the lawfulness of a search and seizure. [Citations omitted.]" *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016).

When the material facts are not in dispute, "the suppression issue simply presents a question of law subject to de novo review." *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides the same protections from unlawful searches and seizures as the Fourth Amendment. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). A traffic stop is a seizure under the Fourth Amendment "when a law enforcement officer displays authority and restrains an individual's liberty by stopping a vehicle on a public roadway." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886

(2014). "[F]or a law enforcement officer's seizure of a citizen to be constitutionally reasonable, the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." 300 Kan. at 637. However, an officer's stop of an individual is not invalid simply because it was a pretext for a drug search so long as a traffic violation actually occurred. *Jones*, 300 Kan. at 638.

A seizure justified on the basis of a traffic infraction should "'resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*.' [Citations omitted.]" 300 Kan. at 639. In fact, "'[a] seizure that is justified solely by the interest in issuing a warning [or traffic] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.' *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)." *Jones*, 300 Kan. at 639-40.

The permissible duration of a traffic stop includes the time it takes for the officer to complete the ordinary inquiries incident to a traffic stop and to address related officer safety concerns. The "reasonableness of a [traffic stop] seizure . . . depends on what the police in fact do." *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1616, 191 L. Ed. 2d 492 (2015). "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.' *Caballes*, 543 U.S. at 407." 135 S. Ct. at 1616. Moreover, "[b]ecause addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. [Citations omitted.]" 135 S. Ct. at 1614.

In *Rodriguez*, the United States Supreme Court expressly stated that the ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's

8

registration and proof of insurance." 135 S. Ct. at 1615. Similarly, our Supreme Court has stated that:

> "[T]he legitimacy of the duration of a traffic stop is measured by the time it takes for an officer to ask for, obtain, and record the driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. As a general principle, once the officer determines that the driver has a valid license and the purpose for the traffic stop has ended, the driver must be allowed to leave without further delay. [Citations omitted.]" *Jones*, 300 Kan. at 640.

But, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009); *Jones*, 300 Kan. at 640.

With regard to dog sniffs, the *Rodriguez* Court held that "a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." 135 S. Ct. at 1612; *Caballes*, 543 U.S. at 408-09. In *Caballes*, the United States Supreme Court explained that because a person has no legitimate privacy interest in searches which only reveal the location of contraband, the officers do not need reasonable suspicion to conduct an exterior dog sniff of a vehicle during a lawful traffic stop. See 543 U.S. at 408-10; see also *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993) ("[A] drug dog's sniff of the exterior of a vehicle is not a search for the purposes of the Fourth Amendment."). A dog sniff is not an ordinary inquiry incident to a traffic stop but "a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.'" *Rodriguez*, 135 S. Ct. at 1615. "The critical question . . . is *not* whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" (Emphasis added.) 135 S. Ct. at 1616; see *State*

9

*v. Lewis*, 54 Kan. App. 2d 263, 271, 399 P.3d 250 (2017), *rev. denied* 307 Kan. ___ (December 22, 2017).

Relying upon our court's decision in *State v. Wilson*, No. 117,125, 2017 WL 3948450 (Kan. App. 2017) (unpublished opinion), the State argues we should find that the officers did not unreasonably prolong the traffic stops, reverse the district court's suppression orders, and remand both cases for trial.

Unlike in the present cases, however, while the district court in *Wilson* expressly found that the traffic stop was not unreasonably prolonged, the district court suppressed the evidence anyway after concluding that the officers lacked a reasonable suspicion to justify conducting the dog sniff during the traffic stop. The key finding missing from the district court's suppression orders in both cases here is whether the traffic stops were unreasonably prolonged.

The State asks us to validate the searches as lawful, but our Supreme Court has declared that "the absence of factual findings in the district court proceeding interferes with [the appellate court's] analytical model, because appellate courts do not make their own factual findings. Rather, appellate courts only review those factual findings which have been made by the district courts." *State v. Estrada-Vital*, 302 Kan. 549, 555, 356 P.3d 1058 (2015). Appellate courts are limited to reviewing a district court's factual findings on a motion to suppress for substantial evidence, normally, giving "great deference to the factual findings of the district court." *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). But "[w]hen the record on review does not support a presumption that the district court found all the facts necessary to support the judgment, this court will remand the case for additional findings and conclusions." *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

A.     *Hockmuth*

Generally, "if the material facts are not in dispute, the suppression issue simply presents a question of law subject to de novo review." *Cleverly*, 305 Kan. at 604. "Nevertheless, an appellate court's de novo review can only be based on factual findings made by the district judge. An appellate court cannot resolve disputed facts." *Jones*, 300 Kan. at 643.

In Hockmuth's case, the parties stipulated that Bachar stopped Hockmuth's vehicle because she did not have her headlights turned on. Although the lawfulness of the stop is not at issue, the reason for the stop is relevant to the question of how much time was necessary to complete the mission of issuing a citation or ticket for the violation. See *Rodriguez*, 135 S. Ct. at 1614 (the "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'"). The State argues we should find the seizure lawful on appeal because the dog sniff did not unreasonably prolong the traffic stop as Lazar alerted only five minutes into the traffic stop and Bachar had not completed issuing the citation. But Hockmuth argues the officers prolonged the traffic stop by taking the time to request the K-9 unit.

As stated above, our determination of whether a traffic stop seizure is reasonable depends on what the officers actually did during the stop. The time it takes for the officers to complete the traffic stop in relation to the dog sniff is not necessarily dispositive. In fact, the United States Supreme Court rejected the government's argument in *Rodriguez* that officers may buy more time to conduct unrelated tasks

> "so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the
> stop, and the overall duration of the stop remains reasonable in relation to the duration of
> other traffic stops involving similar circumstances. . . . The critical question . . . is not

11

whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" 135 S. Ct. at 1616.

Given the district court's limited findings and failure to determine whether the officers unreasonably prolonged the traffic stop to conduct the dog sniff, we find it impossible to determine the propriety of the dog sniff of Hockmuth's car based upon the record before us. Although the parties stipulated to the facts here, the parties did not stipulate to, and the district court did not make, a factual finding on when dispatch returned the results of Bachar's requested computer and driver's license check on Hockmuth. The district court also did not make any factual findings on whether Bachar had completed, or reasonably should have completed, the traffic investigation before or after Bachar's request for the K-9 unit and when the K-9 unit performed the dog sniff on Hockmuth's car.

While it may be true that the officers lacked reasonable suspicion to conduct the dog sniff of Hockmuth's car, the district court erred in suppressing the evidence based on this legal conclusion because reasonable suspicion was not required to justify a dog sniff during a lawful traffic stop. Because the record on appeal does not support the presumption that the district court found all the facts necessary to support an implicit legal conclusion that the officers prolonged the traffic stop, we vacate the district court's order suppressing the evidence obtained against Hockmuth and remand the case to the district court for further findings and the taking of further evidence, if necessary. See *Vaughn*, 288 Kan. at 143. Specifically, the district court needs to make factual findings and conclusions of law regarding the overall duration and reasonableness of the stop, including—as outlined above—determining when dispatch returned the results of the computer and driver's license check on Hockmuth. Additionally, the district court must determine whether the traffic stop was, or reasonably should have been, completed when Bachar requested the K-9 unit and when the K-9 unit performed the dog sniff.

12

B.    *Cline*


In Cline's motion to suppress, the parties did not stipulate to the facts. Rather, the district court held a hearing on the motion and admitted videos and audio recordings of the traffic stop. But, in its very brief written order granting Cline's motion to suppress, the district court failed to make any findings whatsoever, including whether the dog sniff may have unreasonably prolonged the duration of the traffic stop.


Cline argued before the district court that it should suppress the evidence because the officers needed but lacked a reasonable, articulable suspicion to justify a dog sniff even if the dog sniff did not unreasonably prolong the traffic stop. Before us, Cline concedes that the officers did not unreasonably prolong the traffic stop to conduct the dog sniff, and the State seizes upon this concession to argue that we should reverse the district court's suppression order and remand the case for trial.


As already explained, the law does not require reasonable suspicion to justify a dog sniff. While law enforcement may conduct a drug dog sniff during a lawful traffic stop so long as it does not unreasonably prolong the stop, central to determining whether the dog sniff prolonged the traffic stop is whether the officer had completed the ordinary inquiries incident to the traffic stop. See *Rodriguez*, 135 S. Ct. at 1614-16.


Here, the district court made no factual findings whatsoever regarding the parties' presentation of the evidence. Although the record on appeal contains the transcript of the hearing and the video and audio recordings of the traffic stop, the record on appeal does not support the presumption that the district court found all the facts necessary to support its judgment that the officers prolonged the traffic stop. We therefore vacate the district court's order suppressing the evidence obtained against Cline and remand the case to the district court for further findings and the taking of further evidence, if necessary. See *Vaughn*, 288 Kan. at 143. Specifically, the district court needs to make factual findings

13

and conclusions of law regarding the overall duration and reasonableness of the stop and determine when the officers requested—and when dispatch returned—Cline's driver's license check in relation to when Becker conducted the dog sniff on her vehicle.

The district court's suppression orders are vacated, and the cases are remanded for further proceedings consistent with this opinion.