No. 46,658

STATE OF KANSAS, *Appellee,* v. GARY W. KELLEY, *Appellant.*

(498 P. 2d 87)

Opinion filed June 10, 1972.

*Brian J. Moline,* of Wichita, argued the cause and was on the brief for the appellant.

*Reese C. Jones,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN C.: Gary W. Kelley was convicted by a jury of one count of kidnaping in the first degree with bodily harm inflicted (K. S. A. 21-449), two counts of kidnaping in the second degree (K. S. A. 21-450) and one count of forcible rape (K. S. A. 21-424). He was acquitted of another count of kidnaping in the first degree. His motion for new trial was overruled. Two prior felony convictions were shown. Imposition of sentence upon the two convictions for second degree kidnaping was suspended. He was sentenced to life imprisonment for the first degree kidnaping and to fifteen years imprisonment (concurrent) for the rape. Mr. Kelley now appeals.

The sufficiency of the evidence to sustain the convictions is not challenged; however, some of it should be stated for an understanding of the trial errors asserted.

On June 13, 1970, a fourteen year old girl and four male youths, all of whom resided in Haysville, Kansas, drove to Wichita. About midnight the group parked their automobile in the parking lot of a tavern while one of the young men entered the tavern to see a friend. Meanwhile five older Wichita young men gathered about the Haysville vehicle. This group included Paul L. Lassley, Dale Schriner, John Berry, Charles Brantley and the appellant Kelley. When the operator of the Haysville vehicle returned to it from the tavern and attempted to drive it away the Wichita group blocked the passage and refused to allow the Haysville group to depart. The Wichita group then forcibly commandeered the Haysville automobile, together with its occupants, and drove it and their own vehicle to a sparsely populated area on the outskirts of Wichita. One of the Haysville boys escaped by jumping from the automobile as it was leaving the parking lot; this youth reported the abduction to the Wichita police.

The two automobiles were parked adjacent to a field which was bordered by a windbreak of trees. There the Wichita group took two of the Haysville boys across the road where they attempted to confine them in a half-completed stone house.

The Wichita group then attempted through the use of a knife to force the girl and the remaining Haysville youth to have sexual intercourse. When the youth refused he was struck with a board and rendered unconscious. Appellant then removed the girl's

clothing and demanded she have sexual intercourse with him. The girl refused, saying she was menstruating and wearing a tampax. When the girl refused to comply with appellant's request to remove the tampax, appellant removed it and threw it outside the automobile. He then dragged the girl from the vehicle and forced her to the ground where he and Lassley attempted to have intercourse with her. When it was discovered the two Haysville boys had escaped from the house across the road appellant and Lassley forced the girl into the back seat of their automobile and drove it to a vacant lot. En route appellant had intercourse with the girl against her will. At the vacant lot the girl was further sexually abused by appellant and Lassley, the particulars of which need not be related. The girl was left lying there, from whence she went to the nearest residence to notify the police.

Appellant was convicted of second degree kidnaping of two of the Haysville boys and of first degree kidnaping and rape of the girl.

Appellant first asserts the trial court erred in denying his request for a transcript of his preliminary hearing. It appears that a reporter took notes at this proceeding. A transcript was initially requested of the administrative judge of the judicial district, and denied, and later of the trial judge immediately following the voir dire examination of the jury. Appellant bases his request here upon the provisions of K. S. A. 1971 Supp. 22-2905 (1). This particular statute is inapplicable to the type of transcript requested and supplies no authority for granting the request; this fact, however, furnishes no basis for disposition of the problem.

Prior to denying the request for a transcript the trial court made inquiry into the matter. The colloquy reflected by the record reveals that appellant's trial attorney, Mr. Fry, had represented appellant at the preliminary hearing, at which appellant had testified, and that Mr. Fry remembered the testimony. In making its ruling after defense counsel indicated the transcript was needed for effective cross-examination of any witness who might change his testimony, the trial court stated:

"The simple matter would be to bring in the reporter with the notes and have it testified to. You won't be precluded from doing that. . . . If there is something that a witness testified to in this case that you feel is at variance from his testimony in a preliminary hearing, the reporter's notes are available for impeachment purposes."

In *State v. Burgess,* 205 Kan. 224, 468 P. 2d 229 (decided April 11, 1970), we stated:

"Nor is there any substance to the charge that failure to provide the defendant with a transcript of the preliminary hearing impinged upon his constitutional rights. Neither our statutes nor our procedural rules impose such an obligation on the state, *and no prejudice to the substantial rights of the defendant has been shown on this score.*" (Emphasis supplied.) (p. 227.)

K. S. A. 1971 Supp. 22-2904, which became effective July 1, 1970, provides with respect to preliminary examinations:

"*Testimony reduced to writing.* The magistrate may cause a record of the proceedings to be made and should do so when requested by the prosecuting attorney or the defendant or his counsel at least 48 hours prior to the time set for preliminary examination. The cost of preparation of such record shall be paid by the party requesting it. If neither party requests the record or the request is made by an indigent defendant, such costs shall be paid from the general fund of the county and taxed as costs in the case."

Thus the legislature has expressly authorized either party to have a record of the proceedings of a preliminary examination prepared at his own expense. Preparation at state expense is contemplated in case of an indigent as it is now fundamental that when the state affords a defendant a right, either by statute or constitutionally, the exercise of that right cannot be conditioned upon the defendant's ability to pay (*Griffin v. Illinois,* 351 U. S. 12, 100 L. ed. 891, 76 S. Ct. 585). K. S. A. 1971 Supp. 22-4509 makes that preparation conditional upon a determination by the trial court that such transcript is necessary for the indigent to present his cause adequately. In this connection it should be noted that any request by a defendant for a transcript should be made far enough in advance of trial to allow a reasonable amount of time within which to transcribe the notes and to avoid the necessity of suspending the trial pending production of the transcript.

In *Roberts v. LaVallee,* 389 U. S. 40, 19 L. ed. 2d 41, 88 S. Ct. 194, a request by an indigent for a free copy of a preliminary hearing transcript was denied in a state prosecution. Such copy could have been secured upon payment of a prescribed fee. Because of failure to supply a copy the court vacated the conviction as being obtained in violation of the equal protection clause of the fourteenth amendment to the federal constitution. The court did not explore the question of need for a transcript nor of any alternatives to its production.

The issue of a free transcript was most recently explored in

*Britt v. North Carolina,* 404 U. S. 226, 30 L. ed. 2d 400, 92 S. Ct. 431 (decided December 13, 1971). There petitioner's first trial in state court for the offense of murder had resulted in a hung jury. Upon retrial one month later he was convicted. Between trials his request as an indigent for a free transcript of the first trial was denied. Both trials occurred in a small town before the same judge and with the same counsel and court reporter, who was well known to defense counsel and would have read back his notes to defense counsel before the second trial had he been asked to do so. It was held that under the particular narrow circumstances, a transcript was not needed for the petitioner's defense.

The *Britt* court first pointed out that the state must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. The court further stated:

"While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. The question here is whether the state court properly determined that the transcript requested in this case was not needed for an effective defense.

"In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) *the availability of alternative devices that would fulfill the same functions as a transcript.*" (Emphasis supplied.) (p. 227.)

In the light of the foregoing, it must be deemed proper for a trial court, in making its determination of necessity for a transcript of a prior proceeding, to consider the availability of alternative devices that would fulfill the same functions as a transcript.

In the case at bar appellant was represented at trial by the same counsel as at preliminary examination. That attorney acknowledged he remembered the testimony. The trial court specifically indicated full access to the reporter's notes was available when needed. We believe this constituted a fair and adequate alternative to the furnishing of a transcript. In passing it may also be noted that appellant, as well as other defendants who have been placed on trial upon criminal charges since July 1, 1970, has had available comprehensive discovery tools to aid him in the presentation of material evidence in his defense (K. S. A. 1971 Supp. 22-3212). We hold the trial court did not err in concluding a transcript was not necessary for appellant adequately to present his defense.

The next two issues raised by appellant may be quickly determined. He asserts the trial court erred in permitting the state during the trial to endorse on the information as a witness the name of a police laboratory investigator and in permitting the witness to testify. Appellant's trial counsel conceded at the time of making his objection he had previously interviewed the witness. Surprise was not asserted, either at trial or here, continuance was not requested, prejudice is not shown and under familiar rules we hold the trial court did not abuse sound discretion in permitting the late endorsement (*State v. Zimmer*, 198 Kan. 479, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. ed. 2d 286, 88 S. Ct. 298).

Appellant complains of the admission into evidence of the tampax allegedly worn by the rape victim. Three days after the offense this item was found by an investigating officer in a secluded spot where the offense allegedly occurred. Appellant makes the bald assertion of irrelevancy and that display of the exhibit was inflammatory. No cogent reasons for the contentions are advanced. The exhibit had probative value, a proper foundation was laid for its admission and no error appears.

Finally, appellant complains of the prosecution's closing argument to the jury. He asserts it went beyond the evidence and was inflammatory to his prejudice. No objection to the argument was made at trial, nor did the trial court intercede. The record does not indicate whether this impropriety was mentioned upon motion for new trial. It goes without saying that in argument to the jury the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. He should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. (See ABA Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function, Approved Draft, 1971, § 5.8 [d].)

Counsel for the prosecution here in the closing argument made reference to the consequences of an acquittal on future lawlessness in the community. Such an argument was beyond the scope of the issues in a criminal trial and should not have been allowed. Rhetoric of this type has too frequently plagued this court as well as other appellate courts, and with varying results. In extreme cases reversal has been ordered, although generally in such instances

there has been objection made at trial level as in *State v. Wilson,* 188 Kan. 67, 360 P. 2d 1092. Nonetheless in *Wilson* this court quoted approvingly the following statement from *State v. Gutekunst,* 24 Kan. 252, as follows:

"*Where counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case,* it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel. The dignity of the court, the decorum of the trial, the interest of truth and justice forbid license of speech in arguments to jurors outside of the proper scope of professional discussion." (p. 73.)

In *Roda v. Williams,* 195 Kan. 507, 407 P. 2d 471, this court, after holding that a jury argument was improper, stated:

"From the cold printed record it is difficult, if not impossible, to assess the impact of improper jury argument in every case. This is best left to the trial judge in the first instance who is in position to take immediate corrective action. Moreover, in this case no objection was made to the argument until upon motion for new trial.

"The trial court should, of course, of its own motion without waiting for objection from opposing counsel protect litigants from misconduct of counsel, particularly where the misconduct is so prejudicial that it must influence the jury. If the court fails to act of its own motion, then an objection should be made and a ruling thereon had in order to take advantage of the error in such improper conduct (88 C. J. S., Trial, § 196 b). Such misconduct may be waived by failure to object (88 C. J. S., Trial, § 196 e). This rule has been applied by this court [Citations]." (p. 515.)

The rule was recently applied in *State v. Fleury,* 203 Kan. 888, 457 P. 2d 44, and iterated as follows:

". . . [R]eversible error cannot be predicated upon a complaint of misconduct of counsel in the closing argument to the jury where the defendant makes no objection to the misconduct and makes no request to have the court admonish the jury to disregard the objectionable statements." (p. 896.)

See, also, *Schmidt v. Farmers Elevator Mutual Ins. Co.,* 208 Kan. 308, 491 P. 2d 947.

In *Fleury* it was pointed out that the trial court in its instructions had admonished the jury as to its duty to disregard any statements by counsel having no basis in the evidence. Such instruction is not, of course, to be taken as carte blanche for a prosecutor to indulge in any kind of diatribe. He must be free to present his arguments with logical force and vigor but should not allow an excess of zeal for conviction or a fancy for exaggerated rhetoric to carry him beyond the permissible limits of argument (ABA Standards, *ibid.,* § 5.8, p. 127).

In view of all the foregoing we conclude reversible error is not shown in the closing argument.

The judgment is affirmed.

APPROVED BY THE COURT.