No. 47,452

STATE OF KANSAS, *Appellee*, v. DANNY RAY LAMB, *Appellant*.

(530 P. 2d 20)

Opinion filed December 7, 1974.

*Glen Tongier*, of Coffeyville [Court appointed], argued the cause and was on the brief for the appellant.

*Richard A. Medley*, County Attorney, argued the cause and *Vern Miller*, Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Danny Ray Lamb, appeals from convictions by a jury of the offenses of aggravated robbery (K. S. A. 1973 Supp. 21-3427) and kidnapping (K. S. A. 1973 Supp. 21-3420). The victim of both offenses was Norman Schaefer, a resident of Coffeyville.

The state's evidence consisted primarily of the eyewitness testimony of Schaefer and that of three cohorts of defendant who were with him in the late hours of the evening of November 18, 1972, and early morning hours of November 19, when the offenses against Schaefer were perpetrated. The three companions of defendant were William James Lanham, Leroy Weber and Vernon Lee Frakes, each of whom was convicted on a plea of guilty prior to the trial of defendant.

The evidence discloses that during the evening of November 18,

1972, defendant and his three companions assembled at a residence in Liberty, Montgomery County, and commenced drinking. They later proceeded to a residence in Parsons in Labette County. During the foursome's visit at the Parsons residence, several persons were beaten and robbed. One of the witnesses testified that he had been sentenced for the offenses committed in Parsons. The state's injection of the Parsons episode into the instant trial is the basis of several of defendant's points on appeal. The evidence discloses that the foursome left Parsons and, after making several stops along the way, ultimately arrived at a tavern known as the "Eagle's Club" about 12:30 a. m. The club was located near Coffeyville in Montgomery County. The foursome made contact with Schaefer at the "Eagle's Club." Schaefer was described as a "flashy" or "flamboyant" dresser and was driving a white convertible Cadillac automobile.

Around 2:30 a. m. the foursome and Schaefer exited the Eagle's Club and went out to the adjacent parking lot where an altercation took place. There was testimony that Schaefer was forced, and also some testimony that he was enticed by deception to enter his automobile with defendant and Lanham. Defendant drove Schaefer's automobile to an isolated area near the Oklahoma border. Frakes and Weber followed in the automobile which the foursome had used during the night. Lamb and Schaefer testified that Schaefer was struck a time or two in the Eagle's Club parking lot before he was put in his automobile and that, as they proceeded to the isolated area, Schaefer was given several heavy blows to his head and body by defendant. Upon arriving in the remote area, Schaefer was beaten severely, stripped of his clothes and belongings, and left lying unconscious and naked in a roadside ditch. Schaefer regained consciousness, crawled to his automobile, which had been left nearby, and drove until he found a place to report the incident, giving descriptions of his four assailants.

There was testimony that after the four left Schaefer in the ditch, they divided the booty and separated. Defendant and Lanham returned to Oklahoma City from where they came.

Within a few days, Weber and Frakes were apprehended and at the time were in possession of Schaefer's belt, shoes and ring.

According to the record the only evidence submitted by defendant was his own testimony. Defendant testified that he came to Montgomery County on November 18, 1972; that he had been taking

medication, drinking heavily; and that he remenbered nothing about his activities during the early morning hours of November 19.

Defendant makes fifteen specifications of error on appeal. In his brief he has grouped points together and consolidated his arguments on those combined specifications of error. In our review, we shall consider the points as they are presented by defendant.

In the first section of his brief defendant consolidates his arguments on points Nos. 1, 2, 6 and 11, all of which concern language contained in counts Nos. 1 and 2 of the information. Defendant says the trial court erred in overruling his motion to dismiss which was aimed at the language employed in the information. In count No. 1 defendant was charged with aggravated robbery, the language complained of by defendant is:

". . . [W]ilfully, wrongfully, unlawfully and feloniously *obtain and exert unauthorized control over personal property* belonging to Norman Schaefer, from his person and in his presence by inflicting bodily harm upon that person; . . ." (Emphasis supplied.)

Defendant says the language is vague and does not follow the definition of robbery set out in K. S. A. 1973 Supp. 21-3426 which reads:

"Robbery is the *taking of property* from the person or presence of another by threat of bodily harm to his person or the person of another or by force.
"Robbery is a class C felony." (Emphasis supplied.)

While it would have been better pleading to follow the exact wording of the statute, defendant was not misinformed, as the words used in each instance depict the same meaning. In the general definition of terms used in the criminal code, K. S. A. 21-3110 (12) reads:

" '*Obtains or exerts control*' over property includes but is not limited to, *the taking*, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property." (Emphasis supplied.)

Moreover, the bill of particulars, filed by the state, sets out in detail the charges and the state's evidence in support thereof. Defendant was fully informed as to the charge of aggravated robbery.

In point No. 11, defendant complains because the court used the term "taking" in instructing on the elements of aggravated robbery. As we have previously pointed out, there is no material difference in the meaning of the term "taking" and that conveyed by the language employed in the information. The instruction given was in the language of PIK [Criminal] 56.31, and correctly defines the elements of aggravated robbery.

In points Nos. 2 and 6 defendant complains because the state was permitted to amend count No. 2 of the information, and further says that he was not arraigned on count No. 2 as amended. Count No. 2 originally charged aggravated kidnapping under K. S. A. 21-3421; however, defendant was apparently bound over on kidnapping under K. S. A. 1973 Supp. 21-3420. Count No. 2 of the information, as filed, charged aggravated kidnapping under K. S. A. 1973 Supp. 21-3421, and defendant was arraigned on the information in that form. When this was called to the county attorney's attention he asked, and was granted leave, to amend by striking the allegation concerning bodily harm; thus, reducing the charge to kidnapping under 21-3420. The record shows a lack of diligence on the part of the county attorney in failing to proofread the information before filing, but it fails to establish prejudice to defendant's rights. The amendment did not charge a new or greater offense, but rather a lesser included offense and, thus, was authorized by K. S. A. 1973 Supp. 22-3201 (4). As we have previously indicated, the defendant was fully informed as to the precise charges and the evidence which the state intended to produce in the bill of particulars which was filed long before defendant went to trial.

The next section of defendant's brief deals with points Nos. 3 and 12. Defendant claims error in permitting the state, at the close of its evidence, to amend the kidnapping charge in count No. 2 by adding the words "or deception" to the allegation "by means of force." Defendant claims further error in the court's use of the phrase "or deception" in the instruction setting out the elements of kidnapping. Neither of defendant's contentions has merit. Several witnesses testified that Schaefer was put in his automobile by force, but one witness testified that Schaefer was talked into it. While deception was not mentioned in the bill of particulars, no objections were lodged against any of the testimony on this point. The amendment merely operated to conform the information to the evidence presented; no additional or different crime was charged; and we fail to see how defendant suffered prejudice by reason of either the amendment or the instruction given in line therewith.

Defendant in his brief and on argument relies most heavily on his fourth point in which he contends that remarks of the county attorney in closing argument compels a reversal and a new trial. The objectionable statement came at the close of the state's final argument. The statement and objection is reproduced in the record and restated in defendant's brief as follows:

"Mr. Medley: Think very carefully, ladies and gentlemen, if you let Mr. Lamb go today, the next time you drive down U. S. Highway 169, you may be the one that is stopped—

"Mr. Tongier: Your Honor—

"Mr. Medley: I hope you haven't done—

"Mr. Tongier: Just a moment, Mr. Medley, I am objecting to argument outside of the evidence, is highly prejudicial, completely foreign to the evidence in this case—

"The Court: The jury has heard the evidence and they have been instructed, they will consider only the evidence that was admitted. Proceed.

"Mr. Medley: You heard me. I think you heard my admonition. Thank you.

"The Court: The bailiff will come forward."

The county attorney's statement complained of here is quite similar to that considered in the recent case of *State v. Kelley,* 209 Kan. 699, 498 P. 2d 87. In the *Kelley* opinion we said that such an argument was beyond the scope of the issues in a criminal case and noted that rhetoric of this type has too frequently plagued this court as well as other appellate courts. In the *Kelley* opinion decisions of this court dealing with misconduct of the prosecutor in closing argument are reviewed and this observation is made:

". . . In extreme cases reversal has been ordered, although generally in such instances there has been objection made at trial level as in *State v. Wilson,* 188 Kan. 67, 360 P. 2d 1092. . . ." (pp. 704, 705.)

Since defendant lodged an objection in the case at bar, as was done in *Wilson,* he argues the objectional statement of the prosecutor requires a reversal and a new trial which was the holding in *Wilson.* However, an examination of the prosecutor's conduct, set forth in the *Wilson* opinion, clearly shows that the extent to which he went to inflame the jury there goes far beyond the closing argument here. The charges in *Wilson* were kidnapping, inflicting bodily harm and committing forcible rape upon a seventeen year old girl. The jury convicted and fixed Wilson's punishment at death. In his closing argument, the *Wilson* prosecutor referred to and quoted from an article written by a syndicated columnist, George Sokolsky, in a column discussing the *Caryl Chessman* case (*People v. Chessman,* 38 Cal. 2d 166, 238 P. 2d 1001, cert, den. 343 U. S. 915, 96 L. Ed. 1330, 72 S. Ct. 650, reh. den. 343 U. S. 937, 96 L. Ed. 1344, 72 S. Ct. 773) which was receiving great notoriety at the time. The most inflammatory portion of the column, which was read to the jury, concerned the mother of a seventeen year old raped daughter, who was quoted as saying of her daughter "she was abused, and

caused to lose her mind and life among normal human beings."
Defendant's counsel objected to the reading of excerpts from the
column. Defendant's objection was overruled by the trial court and
the prosecutor was permitted to continue reading the column to the
jury. This court said the excerpts transcended the limits of fair
discussion and could only be deemed an appeal to prejudice and
passion.

Obviously, the county attorney's statement in the instant case,
though improper, does not rise to the inflammatory level apparent
in the material read to the jury in *Wilson*. But more important the
trial court in *Wilson* overruled defendant's objection and permitted
the prosecutor to proceed—this we said in the opinion:

". . . [P]ut the court's stamp of approval on the state's argument and
reasoning and the purported facts therein stated." (pp. 72, 73.)

In the instant case the trial court recognized defendant's objection
and admonished the jury that it was to consider only the evidence
that was admitted as it had been instructed. The trial court again
considered the matter on motion for a new trial and stated:

"The only ground raised by the motions not previously ruled upon by the
Court is the charge of prejudicial remarks by the county attorney in closing
argument. The record discloses that objection was promptly made by defense
counsel and the jury orally instructed by the Court that they were to consider
only what was admitted as evidence in deciding the case. In addition, the
jury was instructed in writing as to statements of counsel. The Court does not
consider the remarks to have been of such a nature, nor were they made in
such a manner as to warrant a new trial."

We have observed on previous occasions that it is difficult, if not
impossible, from the cold printed record to assess the impact of
improper jury argument in every case and that the trial court is in
a better position in the first instance to evaluate the harm done.
(*Roda v. Williams*, 195 Kan. 507, 407 P. 2d 471.)

In the instant case the record discloses the trial court carefully
considered the impact on the jury at the trial and again on motion
for a new trial and found that the remarks were not of such a
nature or made in such a manner as to warrant a new trial in view
of the court's admonition and instructions to the jury. After careful
consideration, we conclude that under the circumstances related
reversible error is not shown in the closing argument. Before con-
cluding this discussion; however, we would reiterate what was said
in *State v. Kelley*, supra, that while a prosecutor must be free to
present his arguments with logical force and vigor, he should not

allow zeal for a conviction or a fancy for exaggerated rhetoric to carry him beyond permissible limits of arguments. (ABA Standards, Prosecution Function, § 5.8, [Argument to the Jury], p. 126.)

In points Nos. 5 and 7 defendant claims the court erred in permitting the county attorney to allude to the robbery and beating in Parsons and the admission of testimony of defendant's cohorts concerning the same. While there was testimony by one cohort that he had been convicted of the Parsons offense, there was no evidence that defendant had been convicted for any offenses committed in Labette County; thus, defendant argues such evidence was inadmissible and, further, that it was offered only for the purpose of showing a disposition on the part of defendant to commit crime.

The Labette County offenses referred to and the offenses in Montgomery County for which defendant was on trial were a connected series of offenses, all taking place within a span of four to five hours and identical in character, *i. e.*, robbery and beatings. Evidence of the Parsons offenses was admitted for the limited purpose of proving intent and motive and a proper limiting instruction (No. 16) was given. Conviction is not a prerequisite to the admission of other similar offenses into evidence if the requirements for admission are otherwise fulfilled. (*State v. Rambo*, 208 Kan. 929, 495 P. 2d 101.) The offenses were connected, identical in character, and relative to the issues of identity and motive. We find no merit in any of defendant's contentions in this regard.

In points Nos. 13 and 15 defendant claims error in the trial court's failure to give a cautionary instruction regarding the testimony of accomplices and, further, that the trial court should have granted a new trial in the interest of justice pursuant to K. S. A. 1973 Supp. 22-3501. Defendant's contentions are without merit. In the first place the record discloses no request by defendant for a cautionary instruction; and, secondly, the testimony of defendant's companions was fully corroborated by the testimony of Schaefer. The failure of the court to instruct the jury that the testimony of an accomplice should be considered with caution does not constitute reversible error when the testimony of the accomplice is fully corroborated. (*State v. Wood*, 196 Kan. 599, 413 P. 2d 90; and *State v. Miller*, 83 Kan. 410, 111 Pac. 437.) The record reveals overwhelming evidence of guilt and in view of what has been said there was no reason to sustain defendant's motion for a new trial.

We find no reference in defendant's brief to points Nos. 8, 9 and 10; thus, they will not be considered on appeal.

We have carefully examined each contention presented by defendant and find no error shown, therefore the judgment of the trial court is affirmed.