NOT DESIGNATED FOR PUBLICATION

No. 115,990

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBBIE A. THOMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Chautauqua District Court; JEFFREY D. GOSSARD, judge. Opinion filed February 9, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Jon S. Simpson*, assistant solicitor general, *Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GARDNER, J., and TIMOTHY L. DUPREE, District Judge, assigned.

PER CURIAM: Robbie A. Thomas was convicted of aggravated battery, abuse of a child, and aggravated endangering a child. These charges arise from an incident while Thomas was babysitting his girlfriend's children on July 2, 2015. The child in question was age two and had soiled his pants. On appeal, Thomas does not argue that the evidence did not establish that he was the cause of the child's burns when he was cleaning off the child in the bathtub that night. He argues that the district court erred in instructing the jury on the mental state necessary to support his conviction of aggravated battery and that the prosecutor made improper arguments in closing. He also argues cumulative error and that in calculating his criminal history score, the district court improperly classified

1

his 2001 Virginia conviction for assault and battery of a family member as a person crime.

*Jury Instructions*

Thomas argues that Jury Instruction Nos. 6 and 12 allowed the jury to convict him of aggravated battery without determining whether he acted while knowing that great bodily harm or disfigurement of another was reasonably certain to result.

The three-step protocol for our analysis of a jury instruction issue (jurisdiction, merits, prejudice) is spelled out in *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Jurisdiction is not at issue here. The State conceded that the jury instruction for aggravated battery and the instruction for knowingly were legally incorrect. Because there was no objection to these instructions, we apply the clear error standard found in K.S.A. 2016 Supp. 22-3414(3) in evaluating the prejudice element. We will find clear error if we are firmly convinced the jury would have reached a more favorable verdict for Thomas had the proper instructions been given. See *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 (2014).

In Instruction No. 6, the court instructed the jury on three alternative meanings of the term "knowingly":

> "A defendant acts knowingly when the defendant is aware of:
> 1. The nature of his conduct that the State complains about; or
> 2. The circumstances in which he was acting; or
> 3. That his conduct was reasonably certain to cause the result complained about by the State."

In Instruction No. 12, the court instructed the jury on the charge of aggravated battery as follows:

2

"The defendant is charged with aggravated battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly caused great bodily harm or disfigurement to J.D., DOB XX/XX/2012;

2. This act occurred on or about the 2nd day of July, 2015, in Chautauqua County, Kansas.

"Aggravated battery is a general intent crime. The requisite general intent is merely the intent to engage in the underlying conduct which results in great bodily harm. The State is not required to prove that the defendant intended the precise harm or result that occurred."

In *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), our Supreme Court stated that "knowingly" for purposes of an aggravated battery conviction requires more than merely proving the defendant intended to engage in the underlying conduct. It requires that

"the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." 301 Kan. 211.

In *State v. Kershaw*, 302 Kan. 772, 781, 359 P.3d 52 (2015), our Supreme Court held that the State must prove that "'the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result.' [Citation omitted.]"

In light of our Supreme Court's decisions in *Hobbs* and *Kershaw*, Instruction No. 12 incorrectly states that for aggravated battery, "[t]he requisite general intent is merely the intent to engage in the underlying conduct which results in great bodily harm." Further, Instruction No. 6 incorrectly includes two alternative definitions of "knowingly"

3

for purposes of aggravated battery which are contrary to the holdings in *Hobbs* and *Kershaw*.

The instruction for aggravated battery, Instruction No. 12, should have required the jury to find that the accused acted when he was aware that his conduct was reasonably certain to cause the result. It should not have allowed the jury to find that the requisite intent is merely the intent to engage in the underlying conduct which results in great bodily harm. See *Kershaw*, 302 Kan. at 781.

With respect to the aggravated battery charge, Instruction No. 6 should have required the State to prove that Thomas acted knowingly by being aware that his conduct was reasonably certain to cause the result complained of by the State. The instruction should not have given the jury alternatives 1 and 2. See *Hobbs*, 301 Kan. at 210-11. The State has conceded the errors in these two instructions.

We turn to the issue of prejudice. Thomas argues that the State only presented evidence of his anger and evidence of his conduct but not any evidence that he was aware that his conduct could cause the harm complained of. He contends that while the evidence was sufficient to support his conviction for abuse of a child, it does not support a conviction for aggravated battery. Thus, had the proper instructions been given, he would have been acquitted on the aggravated battery charge.

We disagree. There was compelling evidence that Thomas caused the child's burns. Wade Matherly, the medical professional who treated the child, testified that the child's injuries were not consistent with having been placed in hot bath water because the child's feet and knees were not burned. The treating physician, Dr. Jenna Elizabeth, testified that the burns were consistent with a shower wand being held in the same place on the child for an extended period of time. Thomas' 12-year-old daughter told the police that while the water was running in the bathroom, the 2-year-old child who had soiled his

4

pants was screaming as if he were being stabbed or killed and that Thomas kept asking, "Have you had enough? Have you had enough?" According to Thomas' daughter, this went on for about 10 minutes. The only reasonable inference we can draw from these facts is that Thomas was aware that subjecting this 2-year-old child to scalding water for an extended period of time was reasonably certain to cause the burns complained of by the State.

With regard to the "knowingly" element of the crime, the prosecutor focused in his closing argument on the third alternative, consistent with the applicable law, that Thomas' conduct was reasonably certain to cause the result complained about by the State:

> "How do we prove that? Well, the nature of his conduct that we complain about, the circumstances in which he was acting, and his conduct was reasonably certain to cause the result complained about by the State. . . .
> "Aggravated battery. Who burned this child, right? Did he do it knowingly? Was it reasonably certain that these things would happen?"

Had the jury been properly instructed on the knowledge element of aggravated battery, we are firmly convinced that the outcome of the trial would not have been different. Accordingly, we find no reversible error.

*Prosecutor's Statements in Closing Argument*

Thomas asserts that the prosecutor's comments in its closing arguments constituted reversible error because they deprived Thomas of his constitutional right to a fair trial.

In discussing Instruction No. 10, which sets forth the elements of the charge of child abuse, and while showing the jury photographs of the child's injuries, the prosecutor stated:

5

"Let's start with the actual charges themselves. Now we're going to the elements of each particular count, and they start with Instruction No. 10 . . . .

"What must the State prove? Each of these claims must be proven, that he knowingly inflicted cruel and inhuman punishment on [the child.] All right? This is the evidence that's been admitted in this case. Knowingly. Knowingly inflicted cruel and inhuman punishment on [the child.]

"Remember this exhibit from State's Exhibit 9? This is a photograph of [the child's] back. Where do the bruises come in? From the waist up to the middle of his back.

"Where did [Thomas' 12-year-old daughter] say this happened? In their home on July second when Mr. Thomas was disciplining him in the potty training. It's simple. Do you think that's okay? *Do you think that's okay to do to your child? Then you better acquit him, but if it's not okay, you better find him guilty.*

"What else do we have to prove? That [the child] was less than 18. All the testimony—everybody knows he's under 18. He's two when this thing starts; he's three now. Everybody knows that.

"The last element. This act occurred on or about the second of July, 2015, in Chautauqua County. Nobody disputes it happened in Chautauqua County. Nobody disputes it happened in July 2015. What's the dispute about? What's the defense been arguing about for the last two days? You can't prove it happened on July second. I'm sorry, folks. I don't have to. What does it say? It says, 'on or about.'" (Emphasis added.)

The emphasized portion of the prosecutor's argument is the part Thomas complains of.

With respect to the charge of aggravated battery, and more particularly the burden on the State to prove great bodily harm or disfigurement as set forth in Instruction No. 12, the prosecutor argued:

"Aggravated battery. What do we have to prove? [The prosecutor refers the jurors to the specific page in the jury instructions where Instruction No. 12 is found.] I know you'll recall the photographs taken by Deputy Franks at the scene on the seventh. Here's just a reminder from Exhibit 9, aggravated battery.

6

"Great bodily harm. Great bodily harm. These are second-degree burns. These are burns that aren't just, you know, something that will go away in a day or two. This burn didn't go away for over a week. In fact, it had to be treated for another three or four weeks afterwards by this lady right here. (Indicating.) But what's more important?

"Exhibit No. 10. Exhibit No. 10. Permanent scarring, disfiguring. Look at that photograph in Exhibit 10. If that's not disfigurement—look at these photographs in Exhibit 9 and the one that Deputy Franks took, and *if that's not great bodily harm or disfigurement, find him not guilty. If you think it's okay to do that, find him not guilty. If it's not okay to do that, you must find him guilty*." (Emphasis added.)

Again, the emphasized portion is what Thomas is complaining of.

In reviewing this claim we are guided by *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 7, 8, 378 P.3d 1060 (2016):

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial.

". . . In evaluating the prejudice step of our two-step analysis for reversible prosecutorial error, appellate courts shall look no further than, and shall exclusively apply, the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed 2d 705 (1967). Prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."

Also, in *State v. Anderson*, 294 Kan. 450, Syl. ¶ 4, 276 P.3d 200 (2012), the court stated:

7

"In closing argument, a prosecutor may comment on admitted evidence as long as the remarks accurately reflect the evidence, accurately state the law, and are not intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law."

Thomas argues that these remarks by the prosecutor are erroneous because they (1) serve to vouch for the State's case, (2) encourage the jurors to consider factors outside the evidence and the law, and (3) appeal to jurors' passions and prejudices.

■ *Vouching for the State's Case*

With respect to Thomas' first basis for error, vouching for the State's case, we recognize that it is improper for the prosecutor in closing argument to express his or her personal opinion on the credibility of a witness. *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015). But in the cited remarks, the prosecutor made no reference to the credibility of the testimony of any witness. On the other hand, it is within the proper scope of the prosecution's closing argument to discuss the evidence at trial which supports the various elements of the State's claim. *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). It is hard to tell, but this appears to be what Thomas is referring to as vouching for the State's case. But this is the fundamental purpose of the prosecutor's closing argument: to link the evidence favorable to the State to the elements that the State must prove to support a conviction. Thomas makes no effort to explain how vouching for the State's case is improper. Consequently, we find no merit in his first basis for claiming error in these remarks.

■ *Encouraging Jurors to Consider Factors Outside the Evidence and the Law*

Thomas' second basis for claiming error is that the prosecutor's remarks encourage the jurors to consider factors outside the evidence and the law. The prosecutor's first

8

remarks, set forth in detail above, address the elements the jury must consider in order to convict Thomas of child abuse. The first element of that charge is that "the defendant knowingly inflicted cruel and inhuman physical punishment" on the child. For support of this element, the prosecutor referred to State's Exhibit 9, the photo of the child's back. He pointed out evidence that this injury to the child occurred while Thomas was potty training the child, or more accurately, when Thomas was cleaning the child who had soiled his pants. Though somewhat inartfully expressed, the prosecutor argued that if a juror did not believe the injury shown in State's Exhibit 9 was the product of cruel and inhumane physical punishment, that juror should vote to acquit Thomas on that charge because that is an essential element of the crime. We find nothing improper in this argument.

The prosecutor's next part of this statement was, "if it's not okay, you better find him guilty." Viewed in isolation, one might take this to mean that a juror should vote to convict solely based on a finding that the injury shown in State's Exhibit 9 was the product of cruel and inhumane physical punishment, thereby relieving the State of its obligation to prove the other essential elements of the crime.

We think not. The jurors were each provided individual copies of the jury instructions which they could follow as the judge read them and as the attorneys referred to them in their closing arguments. In his final instruction to the jury immediately before the prosecutor's closing argument, the judge instructed the jurors to "disregard any statement concerning the law that was not contained in these instructions."

The prosecutor began his closing argument with the following: "If you would, I'd ask that you turn to Instruction No. 9—that's where I'd like to begin—and keep those handy because I'm going to review them with you." As he began to discuss the individual instructions, he asked the jurors, "Do you see that?" and the jurors nodded in affirmance.

9

This continued as the prosecutor referred the jurors to the instructions they had in hand, occasionally asking them to flip from one instruction to another.

In discussing the instruction on child abuse, and immediately before making the statement Thomas now complains of, the prosecutor reminded the jurors that the State also needed to prove that Thomas acted knowingly. Immediately after the prosecutor's statement that Thomas now complains of, the prosecutor discussed the final elements that the State had to prove for a conviction:  that the child was less than 18 years of age and that the act occurred on or about July 2, 2015, in Chautauqua County. With respect to the statement now complained of, it appears that the prosecutor was arguing that if a juror thought the photo exhibited cruel and inhumane physical punishment, that evidence would support an essential element of the charge necessary to support a conviction. In any event, taking this remark in context, we do not think any reasonable person listening to the prosecutor's remark with the court's written instructions in hand would conclude that he or she was free to find Thomas guilty of child abuse simply and solely on the evidence that the child's injuries were the product of Thomas' cruel and inhumane physical punishment.

In the final remarks that Thomas complains of, the prosecutor discussed in a similar fashion the element of great bodily harm or disfigurement which the State needed to prove to support a conviction of aggravated battery. The prosecutor began his comments by referring the jurors to Instruction No. 12 where the court set forth the elements to be proven to support an aggravated battery conviction. The prosecutor confined his remarks to the element of great bodily harm or disfigurement. He discussed the photographic evidence of the child's burns which support this element of the State's case. As with the prosecutor's earlier comments regarding State's Exhibit 9 in relation to the charge of child abuse, we do not think any reasonable juror would harbor the notion that in discussing Exhibits 9 and 10 in relation to the aggravated battery charge the

10

prosecutor was urging the jurors to disregard the other elements of the crime and convict Thomas solely upon the harm shown in these photo exhibits.

■ *Appealing to the Passions and Prejudices of the Jurors*

Finally, for his third basis for error, Thomas claims these remarks appealed to the passions and prejudices of the jurors. Any action that is intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law is considered to be outside of the wide latitude afforded to the prosecutors to conduct the State's case and is considered to be error. *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 (2004), *overruled on other grounds by Sherman*, 305 Kan. at 88; see *State v. Pabst*, 268 Kan. 501, 505, 996 P.2d 321 (2000).

Thomas cites three cases for support: *State v. Kelley*, 209 Kan. 699, 498 P.2d 87 (1972); *Wilson v. Bruce*, 820 F. Supp. 585, (D. Kan. 1993); and *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993). None of Thomas' cited cases deal with the kind of statement complained of here.

In *Kelley*, the prosecutor, arguing for the defendant's convictions for kidnapping and rape, "made reference to the consequences of an acquittal on further lawlessness in the community." 209 Kan. 704. No such argument was made by the prosecutor here. Similarly, in *Wilson* the prosecutor argued: "And I ask you on behalf of the State to send a message to Mr. Wilson that we're not gonna let him do this to the children in the community." 820 F. Supp. at 587-88. In *Ruff*, the prosecutor argued, "do not allow this conduct to be tolerated in our county. . . . Send that message, ladies and gentlemen, come back with a verdict of guilty." 252 Kan. at 631.

Thomas' prosecutor did not make a "send a message" argument to the jury.

11

The prosecutor's first comment was made in his discussion of Instruction No. 10, which sets forth the elements of child abuse. The elements of this charge were that Thomas (1) knowingly (2) inflicted cruel and inhumane physical punishment (3) on this particular child (4) on or about July 2, 2015, (5) in Chautauqua County. The evidence was overwhelming that Thomas committed the act on this particular child on or about July 2, 2015, in Chautauqua County. As we discussed earlier, there was equally compelling evidence that Thomas acted knowingly. The remaining issue was whether Thomas' acts constituted cruel and inhumane physical punishment. The prosecutor focused on this element in the remarks at issue. If the jurors accepted that the other elements of the claim had been proven, then a conviction turned on whether Thomas' conduct caused cruel and inhumane physical punishment. The jurors were given no guidance in the instructions on what constituted cruel and inhumane physical punishment. They were to rely on their own common knowledge gained from their life experiences in order to characterize Thomas' acts. The prosecutor argued that if the jurors concluded that Thomas' conduct reached the level of cruel and inhumane physical punishment, they should find that element of the crime to have been satisfied and convict Thomas. Otherwise, they should acquit him. We do not find that this argument was designed to inflame the passions and prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.

This same analysis applies to the prosecutor's second remark about the charge of aggravated battery. Again, a central element was whether Thomas' conduct caused great bodily harm or disfigurement. Again, the court gave the jury no guidance on what constituted great bodily harm or disfigurement. Again, that was left to the common sense and collective wisdom of the jurors. The prosecutor addressed this element in reviewing with the jurors the photographic evidence to support the State's case on this point. The essence of his argument, stated less colloquially, was that if a juror concluded that Thomas' conduct caused great bodily harm or disfigurement, that juror should find this element of the crime to have been proven and should vote to convict Thomas. Otherwise,

12

that juror should vote to acquit him. In closing argument, Thomas' counsel conceded: "There is no question that that child . . . was burned." He cautioned that the jury should not decide the case based upon emotions. Taking all of this into account, we do not find that the prosecutor's argument was designed to inflame the passions and prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.

Even if we were to find these comments to have been improper, we would apply the harmless error standard to determine whether Thomas was denied a fair trial. As quoted earlier from *Sherman*, "[p]rosecutorial error is harmless if the State proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." 305 Kan. 88, Syl. ¶ 8. In considering the record as a whole, we find the evidence of Thomas' guilt on these charges to be both substantial and compelling. The jurors had in hand the court's instructions and were directed to the relevant instruction throughout the prosecutor's closing argument. It is clear that the jurors knew and understood, from the instructions that they had in hand and that the prosecutor directed them to during the State's closing argument, what the State had to prove to support a conviction on each count. The jury was instructed that its verdict must be founded entirely upon the evidence admitted and the law as given in the jury instructions. We find no indication that the prosecutor's challenged remarks affected the outcome of the trial.

*Cumulative Error*

Thomas asserts that cumulative errors at trial combined to deny him his constitutional right to a fair trial under the Fourteenth Amendment to the United States Constitution. He asserts that the cumulative effect of the district court's improper jury

instructions and the prosecutor's improper arguments were enough to deny him a fair trial.

Here, there are not multiple errors to accumulate for the purpose of a cumulative error analysis. See *State v. Williams*, 299 Kan. 1039, 1050, 329 P.3d 420 (2014). The only error found was in the how the court treated the element of "knowingly," and that error was found to be harmless. This claim fails.

*Categorizing an Out-of-State Conviction for Criminal History Purposes*

For his final claim of error, Thomas claims the district court improperly classified his 2001 Virginia conviction for assault and battery on a family member as a person crime. This claim raises an issue of statutory interpretation which we review de novo. *State v. Collier*, 306 Kan. 521, 528, 394 P.3d 1164 (2017) (citing *State v. Keel*, 302 Kan. 560, Syl. ¶ 4, 357 P.3d 251 [2015], *cert. denied* 136 S. Ct. 865 [2016]). The legislative act in question is the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2016 Supp. 21-6801 et seq., which sets forth the procedure for classifying prior convictions to score criminal history.

K.S.A. 2016 Supp. 21-6811(e) governs the classification of prior out-of-state convictions. In classifying the prior conviction, the court must first determine whether the prior crime was a misdemeanor or a felony, and then determine whether the crime was a person or nonperson crime. K.S.A. 2016 Supp. 21-6811(e)(2)-(3). Here, the district court classified Thomas' Virginia conviction as a misdemeanor, which Thomas agrees with, so the only issue is whether the district court erred in classifying the Virginia conviction as a person crime.

In determining whether an out-of-state conviction was a person or nonperson crime, the court must decide if there was a comparable offense in Kansas at the time the

14

defendant committed the current crime of conviction. K.S.A. 2016 Supp. 21-6811(e)(3); *Keel*, 302 Kan. at 590. If Kansas does not have a comparable offense as of that date, "the out-of-state offense shall be classified as a nonperson crime." K.S.A. 2016 Supp. 21-6811(e)(3). If Kansas does have a comparable offense as of that date, the court must refer to the Kansas statute to determine whether the out-of-state conviction should be characterized as a person or a nonperson crime. K.S.A. 2016 Supp. 21-6811(e)(3).

To determine whether Kansas statute is comparable to an out-of-state conviction, "'the offenses need only be comparable, not identical.'" *State v. Moore*, 52 Kan. App. 2d 799, 810, 377 P.3d 1162 (2016) (quoting *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 [2014]), *rev. granted* 305 Kan. 1256 (2016). A comparable crime is one that is "'similar in nature and cover[s] a similar type of criminal conduct.'" *Moore*, 52 Kan. App. 2d at 810 (quoting *State v. Riolo*, 50 Kan. App. 2d 351, 353, 330 P.3d 1120 [2014], *rev. denied* 302 Kan. 1019 [2015]).

In determining whether the crimes are comparable, the court may not go beyond determining the fact that the prior conviction occurred and comparing the elements of the crime for purposes of enhancing the sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). If the court is required to find additional facts in order to find the crime comparable, the court must submit the case to a jury to find the facts occurred beyond a reasonable doubt. 530 U.S. at 490.

Thomas asserts that Kansas did not have a statute comparable to his Virginia conviction for assault and battery of a family member when he was convicted of aggravated battery in 2015. In support of his argument, Thomas cites *Descamps v. United States*, 570 U.S. 254, 261, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), as standing for the proposition that in order for the court to use a prior conviction to enhance a sentence, the statute of conviction must have elements that match, or are narrower than, the generic crime. He then asserts that the Virginia statute for assault and battery is much broader

15

than the statute in Kansas, so the district court had to engage in fact-finding in order to find that the Kansas statute has comparable elements. But this identical-or-narrower rule does not apply in Kansas. See *Moore*, 52 Kan. App. 2d at 813-14.

The Virginia statute covering assault and battery of a family member simply provided in pertinent part:  "Any person who commits an assault and battery against a family or household member shall be guilty of a Class 1 misdemeanor." V.A. Code Ann. 18.2-57.2 (2001). Virginia did not define assault and battery but relied on the common-law definitions of assault and of battery. See *Clark v. Commonwealth*, 279 Va. 636, 641, 691 S.E.2d 786 (2010). Historically, Virginia has defined assault and battery under the common law as follows:

> "'An assault is any attempt or offer with force or violence to do a corporeal hurt to another whether from malice or wantonness, as by striking at him in a threatening or insulting manner, or with such other circumstances as denote at the time an intention, coupled with a present ability, of actual violence against his person, as by pointing a weapon at him when he is within reach of it. When the injury is actually afflicted it amounts to a battery, which includes an assault, and this, however small it may be, as by spitting in a man's face, or in any way touching him in anger, without lawful provocation.'" *Hardy v. Commonwealth*, 58 Va. 592, 600-01, 17 Gratt. 592 (1867).

As stated in *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242, 244 (1924), "the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent, or angry manner constitutes a battery for which the law affords redress."

Kansas spells out the crime of domestic battery in detail in K.S.A. 2015 Supp. 21-5414:

16

"(a) Domestic battery is:

(1) Knowingly or recklessly causing bodily harm by a family or household member against a family or household member; or

(2) knowingly causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner.

"(b) Domestic battery is:

(1) . . . a class B person misdemeanor."

Based strictly on the definitions of the crimes as laid out by the Kansas Legislature and the Virginia Supreme Court, the crimes of domestic battery and assault and battery against a family member are comparable. Under both statutes contact with a family or household member in a rude or angry manner constitutes a battery. We need not engage in additional fact-finding to find the statutes comparable, but instead can rely strictly on the elements of the crime. The Kansas and Virginia statutes are similar in nature and cover a similar type of conduct. The comparable Kansas statute, K.S.A. 2015 Supp. 21-5414, provides that the crimes under the statute are person crimes. Therefore, the district court did not err in finding Thomas' 2001 Virginia conviction for assault and battery of a family member was a person crime.

Affirmed.